22 2650 Flynn versus McGraw Hill LLC, Mr. Aiken. Good morning, your honors, and may it please the court. Alexander Aiken on behalf of the plaintiffs. For over 10 years when McGraw Hill sold Kinect products, it paid royalties on the full selling If a customer paid $100 and an author was owed a 15% royalty, McGraw Hill paid $15. Now, however, McGraw Hill makes two unauthorized deductions in its royalty calculations. It deducts $25 from whatever the customer pays to offset the cost of the delivery platform. It deducts an additional amount for ancillary content like questions and answers, and it pays authors only on what remains. McGraw Hill's deductions violate its promise to pay royalties on the selling price of Kinect products and to publish the works at its own expense. The district court's contrary holdings are erroneous in two respects. First, the district court erred in construing ambiguous provisions, including the term work against plaintiffs on a motion to dismiss. Second, the district court erred by failing to credit plaintiffs' allegations, including the allegation that the delivery platform is merely a content hosting and delivery platform, not something more. Starting with the second error, plaintiffs have alleged that the platform that underlies Kinect products is nothing more than a content hosting and delivery platform. Plaintiffs have also alleged that on every sale of a Kinect product, McGraw Hill deducts $25 from whatever the customer pays to offset the cost of that platform. That is a breach of McGraw Hill's obligation to publish the works at its own expense. The district court rejected this argument on the ground that the platform purportedly includes more than just the delivery vessel. It includes ancillary content like questions and answers. But that fails to credit and take plaintiffs' allegations as true, namely that the platform, setting aside any of the content on it, is nothing more than a vessel for delivering the content. It is simply a content hosting and delivery platform. McGraw Hill cannot... Isn't that a conclusory allegation? That it's nothing more than what you say it is? No, Your Honor. We allege the fact that it is a content management system, which is a factual statement about what it does. It is an electronic platform for providing access to the... I think that would resolve the issue, right? So if it's a content management system that hosts both the work as well as other materials, then wouldn't it not be equivalent to the binding or the publication of the work? No, Your Honor. It is equivalent to the binding or the publication of the work, just like the ink and paper of a print textbook or the ink and paper of an instructor's guide are merely the platforms for delivering that content. McGraw Hill cannot deduct a fee and But you can't just allege and assert that it's equivalent to the ink and paper, right? It has to be... There has to be facts supporting it. So why isn't it the case that this is just a platform that can host lots of different works and other supplementary materials, and it's not simply the binding of the work itself? Because, again, Your Honor, we allege the fact that as a content management system, like a Westlaw or a Lexis, how you access the content is the platform. And so the factual allegation is that here we're dealing with... Like in Westlaw and Lexis, if I was owed royalties on an opinion that I wrote, it would be pretty clear that the Westlaw platform hosted a lot more than just my opinion, right? Right. But if you had a contract with McGraw Hill or whomever, in this case Westlaw, that said that it has to publish your work at its own expense, it couldn't make a deduction for the value and to offset the cost of the platform, which is what the issue is here. McGraw Hill is making a deduction... Is that the issue, or is it that, you know, McGraw Hill or Westlaw, in this example, is providing a platform that goes beyond publishing the work, and so it's an offset for other services, other materials? As alleged in the complaint, the platform is merely for hosting content. It's a content management system. It doesn't... But that's a factual thing, just to clarify. I mean, when you have the Connect platform, can you have more than one textbook hosted on it? That is outside the complaint, and I believe the answer is yes, Your Honor. You could access multiple textbooks via the platform, just like you could access multiple cases via Westlaw. So, obviously, if it's something that hosts multiple textbooks, then it's not equivalent to the binding of an individual textbook, right? Well, it is, because the platform here is providing access to the multiple textbooks, just like the print and binding of one textbook provides access to that textbook, and the printing and binding of another textbook provides access to it. The whole point is that McGraw Hill is providing the content via this platform, which we have alleged is merely a delivery vessel, because it's a content management system, and that McGraw Hill cannot offset its costs by charging a flat fee of $25 on every sale. Turning to the district court's other error, the district court held as a matter of law that the work only means the textbook. Respectfully, the publishing agreements do not say that. They are ambiguous on what all is encompassed by the work, because they define it solely by reference to the end title of a product. Well, they also define it in terms of the thing that the author delivers to the publisher, and that is the textbook content, and not necessarily everything else. What do you make of the provision in the agreement that says no royalty or other payment shall be due for supplementary materials distributed with or not sold separately from the capital W work? Those provisions simply mean that when McGraw Hill includes free supplementary materials in the package, then it does not owe an additional payment to plaintiffs beyond the royalty owed on the selling price. But it can also be read to say that your clients don't get any royalty for supplementary materials, which could include the questions and the augmenting materials that are added to what McGraw Hill says is the work, which is the thing that's delivered to them by the author. It could be read that way, but that's the point. It's ambiguous as to exactly whether it allows McGraw Hill to make deductions to the selling price used to calculate royalties, because the supplementary materials here, what this provision is referring to and contemplating, are free supplements that are included in the end product package. The substantively identical provisions in paragraph 12c of the agreements of Professors Carlin, Morduck, and Twenge even refer to these materials as supplementary materials distributed free of charge or below cost. All that these provisions mean then is that when McGraw Hill includes free supplements in the package, then it does not owe an additional payment to plaintiffs beyond the royalty owed. If they're free, how could your client claim a royalty on it in the first place? In other words, why make a provision for the fact that we don't pay royalty on something that we give away free? It's a clarifying provision, Your Honor. The agreements say a royalty shall be owed on the selling price of the work, and these clarify in the negative what no additional payment is owed on, in this case, supplementary materials. But what these provisions do not permit is McGraw Hill, as it contends, to make deductions to the selling price of the work to account for the free materials it's including. And so in the context of Connect, plaintiffs are owed a royalty on the selling price of Connect products. They're not owed that royalty, plus some other payment, because McGraw Hill has thrown in free supplements. So if McGraw Hill had set up its thing by saying you need to buy the e-book and the rest of the Connect platform separately, that is, you pay $45 for the textbook and $45 for the Connect, you know, enhancement to the textbook, would the royalties only be due on the $45 for the textbook? Possibly, Your Honor. That hypothetical would implicate other provisions of the publishing agreements. For example, professors Flynn and Myers have a catch-all provision that says for other rights that aren't covered by this agreement, a 10% royalty is owed. So to the extent there was derivative content or derivative material in some of these separately sold products, that provision would potentially be implicated. But in terms of the work, then the Connect portion of it would not be part of the work if they just gave it a different title. If they said, okay, there's the textbook e-book, and then there's the Connect enhancement, and we're going to sell them separately, then you're saying the work would just be the thing that has the title of the textbook, right? We would say that, Your Honor, but that's not what's happening with Connect. Connect, as alleged in the complaint, is a unitary standalone product sold under the contractually defined titles for a single price. So when the publishing— But I'm just getting at why that is. So you're saying because it's being sold as one product under a title, therefore it's the work. But if McGraw-Hill had just decided to separate them, not even change the product, but just said you have to—you're buying two things now, one thing called the e-book with the title of the textbook and one thing called the Connect enhancement, then your argument wouldn't work because the work would only be the thing that has the title of the textbook. Is that right? I believe that would be correct, Your Honor, but that's not what Connect is. It is a unitary standalone product sold for a single price, and the publishing agreements say you have to pay royalties on the selling price of the work. They are thus ambiguous in— Can I ask about the idea about the work? Why is it ambiguous? I mean, if the contract says you need to deliver two complete clean copies of a manuscript of the work in double-spaced typewritten form, isn't it talking about the work in terms of the manuscript of the textbook? Your Honor, it's ambiguous because the work is actually just defined solely by reference to the title, for example, social psychology. The provisions you just cited are discussing the manuscript that goes into and becomes part of the work, and the formatting of that manuscript— So you're saying a manuscript for the work, the work might still be something beyond what the manuscript is. A manuscript for the work might just be a portion of the work? I don't think there's a dispute, frankly, between the parties that the work is greater than the manuscript. In the print context, for example, the work includes McGraw-Hill's edits to the manuscript, the printing and binding of the textbook, the cover art, indices, end-of-chapter questions, and much more. And so plaintiffs are just seeking what has always been the bargain between them and McGraw-Hill, which is royalties on the selling price of the end-product work, the work sold under the title, set out in the publishing agreements, without deductions for the free ancillary content that McGraw-Hill has added. And I see I'm beyond my time, so I will rest here unless Your Honors have any further questions. Okay, thank you very much, Mr. Aiken. You've reserved time for rebuttal, so we'll hear from you again. Thank you. But let's turn to the appellee, Mr. Shapiro. Good morning, Your Honors. Saul Shapiro from Patterson Belknap on behalf of the appellee McGraw-Hill. The district court got it right here. The decision below should be affirmed. There's really only one question on this appeal, and that is, do the publishing contracts entitle the authors to royalties on the non-textbook, non-ebook materials, even when the authors did not contribute to those materials? And the answer is clearly no. The contracts, as Your Honor was in your questions to Mr. Aiken, was made clear, the contracts entitle them to royalties only on the work. The work is defined by reference to the title of the book. The book is clearly a book or a textbook. And in addition to that... But it's not really disputed that there might be some portions of the work for which the author would not be responsible, right? So if McGraw-Hill added questions at the end of each chapter, study questions for the student, and that was in the textbook, you wouldn't dispute that that's part of the work? You wouldn't, like, deduct some of the selling price to say, well, that's our work and not the author's work? That's correct, because that is sold with the text. The textbook is sold together with... In the Connect platform, my understanding, and maybe you can correct me if I'm not understanding it, is that the Connect platform is kind of like a smart book overlay, right, over the book? So you can click on things and get extra questions and so on? Yeah. So the Connect, to be clear, the Connect consists of things. There's the e-book, there's the platform itself, and then there are these interactive materials, which include... But the interactive materials are integrated with the e-book, right? No, they're separate. All right, well, then I guess I just have this question. So if they were integrated, let's say you had an enhanced e-book where you could click on things in the e-book and, like, questions would pop up. That would look a lot more like questions added to the end of the chapters, right? I guess that's right, Judge, but the key thing here is, do they contribute to the materials, right? And what they're trying to do here is get royalties, full royalties, on materials to which they don't contribute. So when they make a contribution... But again, you agreed a moment ago that even if they don't contribute to the materials, as long as these materials become part of the work, that is, they're part of the textbook, they're entitled to a royalty, even if that enhances the selling price. Well, the work is the manuscript. It's the textbook itself. McGraw-Hill, whatever McGraw-Hill sells with the e-book or textbook, they're entitled to royalties on that, whether or not they contribute to it or not. As you said, obviously, McGraw-Hill edits the book. They have marketing costs. They have all kinds of publicity costs. There's all types of other That's all part of the work. They pay royalties on that. What they don't pay royalties on are these separate materials. Remember, the e-book... I'm not sure why you're telling me this is separate. I mean, it's not uncommon for a work, for a book to be published with a forward written by somebody else, an afterword written by somebody else, an introduction, a preface written by somebody else, all added by the publisher who provides an index and cover art, as your adversary mentioned. We don't have to go to exotic, modern innovations. These are standard things a publisher's had. It's all royalties on it. How could you separate it out? Because it's sold separately. The e-book or the textbook are sold separately. Forward and afterward, it's all within the covers of a standard, ordinary book, the kind I knew when I went to college. And me as well, your honor. And for all of those materials, they get the full royalty. We don't distinguish among that. Yes, but the publisher provided that. And you're saying the work is just what the author delivered. I mean, that's the way I'm reading the contract, actually. But that doesn't seem to work, because because when the work is delivered, the publisher can be expected to add all kinds of things which the publisher pays, written by other people, that still would be part of the work as anyone understands it. Right. I mean, we sell the e-book as a standalone product. And we sell the textbook as a standalone product. And that's what they get their full royalty on. And whether or not McGraw, no matter how much McGraw-Hill, if there's a forward, if there's photographs, there's lots of stuff that goes into that product. And whether or not they contribute to it or not, they're getting their full royalty on that. What they're trying to do here, your honor, is get a full royalty on these separate materials. Well, the question is whether it's separate, right? So if you published a softcover edition and a hardcover edition and a leather bound edition of the same book, and they all had different prices to account for the different levels of would you be able to deduct the cost of the binding of anyone? All of those are the work. No, that's all. No. So even in the press. So then if you just have something called the Connect edition of the work that's on an online platform that's interactive, or you could buy the e-book by itself without the interactive materials, are those just two editions of the same work? No, it's not. It's not the same thing. That's the key thing here, Judge. I think what's a little bit misleading here is this Connect platform is not necessary for you to read the e-book. You can read the e-book, and you can read a textbook without the Connect platform. That's why the ink and paper analogy doesn't work. Because you don't have to. Just like in my example, you could read the textbook without leather bound binding, right? If you decided to issue an edition that has that enhancement, isn't it still part of the work? Yes. If we sold a leather bound edition for $10 more than the paper edition, yes, that would be the work, and they would get their full royalty on the full price. It would also be the case that if you sold an edition of the textbook without end of chapter questions, and then you sold another edition with end of chapter questions that LeGroy Hill provided for $10 more or whatever it is, they'd still get a royalty on the whole selling price, right? That's correct. So your argument depends on the idea that the Connect platform is not really, you know, is a separate thing from the textbook, but why shouldn't it be seen as just an interactive version of the textbook, since you do sell it as a package, right? It's like you do not do what I said in my hypothetical, which is say these are two different products, the e-book and the Connect platform. You say this is the Connect edition of the textbook, right? We say we're selling a Connect. It's not a Connect edition of the textbook. We say we're selling a Connect product, which is separate, and we sell the textbook or the e-book. And the Connect, and again, I think the key thing here is the textbook or the e-book can be sold separately without reference to the Connect platform. It's not necessary. It can be, but when it is sold as part of the Connect product, the Connect platform is the way that the whole thing is delivered, the work as you define it, plus all the bells and whistles. And it seems to me that's the only way this gets into the hands of the readers. I mean, assuming college students read. But Judge Jacobs, I think you've pointed when you were asking Mr. Aiken questions to the bundling clauses. The bundling clauses are precisely what this is about, right? The bundling clauses hold that when we sell the product with the work, when we sell products with the work, then we pay royalties on the work, and we don't pay royalties on the other materials. That's exactly what they say. What they say is they get a pro-rat. If the work as you define it is sold together with the Connect bells and whistles, the delivery system is the Connect platform, correct? For both of them. That is true. Well, then why is that not like, I mean, otherwise the student can't get it. It's the delivery system, and the delivery system of a book is the binding and the pages. No, but the student can get the e-book or the textbook separately without the Connect platform. They can also buy the Connect product as a whole, where they get the e-book. Just to be clear, the student can get it by buying a different product, which is buying the standalone e-book. Right. But if a student buys the Connect version of the book, right, can the student then separate them out and say, well, I'm going to throw away the Connect part and just read the e-book separate from the Connect platform? Yeah, I mean, well, the student could just read the e-book, yes. Could just read the e-book, but can you separate out the pieces? Can he delete the Connect part and just have the e-book on his own? But I don't think that's the crucial thing here. But they have two arguments, right? The first one was this ink and paper analogy, which clearly doesn't work, as the court below found. But why not just view that as another delivery system? The Connect platform is one delivery system. Ink, paper, and binding is another delivery system. You have to get this into the hands of the person who's supposed to read it. Yeah, there are different delivery systems because one is a system in which they have contributed, right? When they contribute, and mind you, when they contribute to the interactive materials, we pay them the full royalty. We don't pay them the full royalty when they don't contribute to the interactive materials. That's what this is about. And his reference to the- But under your argument, are you required to do that? So your argument is that the supplementary materials are not part of the work, right? So if they contribute to the supplementary materials, how does that all of a sudden make them part of the work? It doesn't make them part of the work. I'm confused by that question. You just said when they contribute to the supplementary materials, you pay them a royalty. Yes. You may pursue it to some other contract. Yes, we do. You don't think it's part of the work when they contribute. It's not part of the work when they don't contribute. That's correct. It is not, yes, it's a matter of grace. What we're talking about, and what I'm addressing is their reference to this, you know, kind of long system, the history, which is, again, irrelevant in our view, because we're not, you know, basic contract principles. Well, maybe it's irrelevant, but why did it take McGraw-Hill 10 years to start separating out the different components? Because in 2019, McGraw-Hill was able to sell the e-book separately, and thereby had a separate price for the e-book, and they could establish the prices for each of the materials. And so the only options were Connect and the hard copy. Well, there was the price of the platform, the price of the interactive materials, and the price of the e-book. So once they were selling the e-book separately on their own, they could establish a price for that. But what I'm saying is, the thing that changed is you hadn't been selling the e-book separately on its own. Yes. Students just had the option of the Connect platform and the hard copy version. Yes, that's right. Hypothetically, if suppose you had the right to do this, and you made an audio book out of this economics textbook, people can listen to it when they're driving, you would be paying a royalty, presumably, on that hard disc that the audio book was on, it would be a delivery platform. Because without that, you can't get access to what you view as the work. Am I correct, or is this an invalid analogy? If we were to sell the work on an audio platform, yes, we would pay a full royalty on that. Yes, absolutely. So just, I think I've, have I gone over? You can finish up. Yeah, I mean, I feel like we've gotten a little bit sidetracked here. I mean, for me, the crucial thing here is the contract ambiguous. Is there really any ambiguity? When we look, I think, Judge Mnuchin, when you were asking Mr. Aiken about this, you're saying, in the reference, we look at the contract to determine ambiguity, we look at the contract to figure out whether there's ambiguity. That's kind of basic contract principles. And when the contract talks about the work, it talks about delivery of a manuscript, it talks about printed pages, it talks about all of these things, which clearly are referenced to a textbook or e-book, and they're clearly not references to a digital platform. But by the same token, wouldn't it be the case that you're preparing a manuscript for the work, and the manuscript would not include photographs that McGraw-Hill adds later, or end questions, or the hardcover binding, or any other kind of materials that might be added to it? So there is going to be something more than the manuscript that's going to be part of the work, right? Yes, that's true. But it goes too far to say that the work somehow is expanded so that it includes this entire digital platform, and it includes all of these other interactive materials, which they do not contribute to. Just the question that I had before, so on the same Connect platform, could you have two textbooks? Do you need to pay the price for the Connect? If you buy a second textbook, if I buy the Connect version of textbook one, and then I want to buy textbook two, do I have to pay the full Connect price again, or can I buy the e-book integrated? No, you'd have to buy it again. The whole thing again? Yeah. So the platform doesn't transcend each book, because I'm paying the platform price each time I want a new book, right? No, because you could just buy the e-book and have the e-book. If you wanted the additional... I wouldn't have the platform for that book, right? So the purchase of Access to Connect is per book. No, but you don't need the platform for that book. That's the key thing. You can buy the e-book and the second book for is to get access to the interactive... Some materials for that book. Yes, exactly. But that means that the platform is still just enhances each individual book. No, it enhances... It's not like a platform in which I can plug lots of books. It's the platform that enhances each additional group of interactive materials, which relate to a book. It doesn't enhance each individual book. I'm just scribbling, but not I get the point. I may be slightly confused by this exchange. When you buy the work as you define it, plus the enhancement materials, both of them come, as I understand it, on the Connect platform. Well, you can buy the first part by itself. If you want the whole thing with the bells and whistles, yes, okay, you're going to... It is all going to come to you on the Connect platform, and that including the work itself. Yes, you will get the e-book, the interactive materials, and all of... And those will each be accessible on the Connect platform. But you could, if you wanted to, just buy the e-book. You do not need... It is not the ink and paper analogy fails because you do not need the Connect platform to access the e-book. Got it. Okay, thank you very much, Mr. Aiken. Let's turn back... Sorry, Mr. Shapiro, we'll turn back to Mr. Aiken for rebuttal. Thank you, your honors. Just four moments. At the bottom of the dispute between the parties, based on this argument, is a factual question. How best do you characterize the Connect product? McGraw-Hill wants this court to believe it's a bundle of separate products, but it never sells the platform separately. It never sells the derivative content separately. Instead, as plaintiffs allege, the Connect product is only ever one integrated singular product sold under the titles in the publishing agreements for a single selling price. Thus, under those agreements, McGraw-Hill must pay a royalty on the selling price. McGraw-Hill has also made much of the fact that you can read an e-book via a separate mechanism than the Connect platform. But again, if you're going to read the authored text in a platform, it's like you can read a loose-leaf copy of a print product on loose pages, but if you buy a hard copy of it, then you are necessarily having to read it with... Can I ask a factual question about the degree of integration between the e-book and the other Connect materials? So opposing counsel was saying, no, they're separate. You have the e-book that you can access in a read and then you can access the supplemental materials. Do you agree with that characterization? No, your honor, we would dispute that, and that's a factual question. How do you pull up the supplemental materials on the Connect platform? You log into the Connect platform and then there you have the ability to click on a chapter and read the chapter. You can click on questions and answers and answer those. You can click on videos, etc., but it's all on one platform. Just like if you open a print textbook, you have the actual text being taught, the subject matter being taught, and then end of chapter questions that follow that. So it's all on one platform as part of one product. Mr. Shapiro also referenced that they changed course recently because they started selling e-books recently, but that's a red herring. The e-books have been sold by third parties for years. To the extent they wanted to use this new royalty methodology they use, they could have done it years ago. They're really just changing course after they decided that they wanted to try to cut author's royalties and save money, and have fabricated what is essentially an excuse for that. As another point, all of the provisions cited by Mr. Shapiro near the end of his argument about the double spacing, the number of pages in print, all of those are referring to the manuscript that authors deliver that becomes part of the work. And again, there's no dispute that the work, the end product, is more than just what the plaintiffs write in the manuscript, which is why they've always been paid royalties on the selling price of print textbooks, even though those print textbooks are more than just the words they contributed in the manuscript. I mean it's not, but it's not anything, right? So if they sold as one product two textbooks together, you wouldn't say that each author gets royalties on both textbooks together, would you? That's correct, your honor. If McGraw-Hill was... you know, two, like the math textbook with the chemistry textbook, the chemistry authors would get the royalties for the chemistry textbook, and the math authors would get the royalties for the math textbook, right? That's correct, your honor. But that's not what's going on with Connect, because we're not talking here about separate products under separate contracts between different authors. We're talking about one product that takes an authored text, includes things like questions and answers that have always been in separate digital files, and what plaintiffs are seeking is what has simply been the bargain between them and McGraw-Hill, royalties on the selling price without deductions for that derivative content. And then just to address one point that your honor made at the end of Mr. Shapiro's argument, it is correct that the platform doesn't transcend different products. If you buy, if you want to buy a Connect product, you have to pay the full price for product A and product B. You don't somehow get a platform discount for product B, because you already bought product A. Thus, the platform is in every way just like the printing, the ink, and the binding of a print textbook, in that when you buy two separate textbooks, you separately get a separate product with that printing and binding. Okay, I think we have that argument. That's all I have to say, your honor. Thank you. Thank you very much, Mr. Aiken. The case is submitted.